S92A1195. NAGEL v. THE STATE.
(427 SE2d 490)

HUNT, Presiding Justice.

David L. Nagel, who had been acquitted for murder by reason of insanity, applied for release from commitment. Following a hearing, the trial court denied the application for release. Nagel appeals, alleging due process violations based on the trial court's reliance on the presumption of continuing insanity. We remand to the trial court for findings of fact and conclusions of law consistent with this opinion.

In 1981, Nagel was indicted and tried for the murders of his grandparents, Frank Emmett Marshall, Sr. and Mattie Louise Marshall. The jury returned a verdict of not guilty by reason of insanity. Following Nagel's acquittal, the trial court found Nagel met the crite-

ria for civil commitment as set forth in OCGA § 37-3-1 (9.1). Thereafter, Nagel was committed to the custody of the Department of Human Resources.

In 1991, Nagel filed his application for release under OCGA § 17-7-131 (f). The trial court held a hearing on that application at which medical and lay experts testifying on Nagel's behalf gave their opinions that Nagel was no longer mentally ill or dangerous to himself or others. The trial court denied Nagel's application for release, relying on the statutory presumption of continuing insanity set forth in OCGA § 24-4-21. The trial court, finding that Nagel had not shown there had been a change in his mental status, held he continued to meet the criteria for in-patient civil commitment.

1. We look, first, to the nature of and weight to be given the presumption of insanity under OCGA § 24-4-21. That statutory provision establishes that a mental state, once proven, is presumed to continue. At the release hearing, the insanity acquittee has the burden of proving he is no longer insane. OCGA § 17-7-131 (f) (2). The trial court, rather than mental health professionals, has the responsibility for deciding applications for release under OCGA § 17-7-131. *Loftin v. State*, 180 Ga. App. 613, 615 (349 SE2d 777) (1986).

The presumption of continuing insanity is founded on fundamental legal principles and sound policy considerations.

> A verdict of not guilty by reason of insanity establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness.

*Jones v. United States*, 463 U. S. 354, 363 (103 SC 3043, 77 LE2d 694) (1983). In *Jones*, the United States Supreme Court held that once the accused has pleaded insanity as a defense and a jury has found that the defendant was indeed insane at the time the crime was committed, a presumption that the insanity, established by the defendant, continues to exist is neither unreasonable nor unconstitutional. Id. at 364. In so holding, the Supreme Court noted the fact that an individual has been found guilty of a criminal act indicates dangerousness, and "this concrete evidence generally may be at least as persuasive as any predictions about dangerousness that might be made in a civil-commitment proceeding." Id.

It is proper for courts to "pay particular deference to reasonable legislative judgments." *Jones*, supra, 463 U. S. at 364, n. 13. See also Justice O'Connor's concurrence in *Foucha v. Louisiana*, 60 USLW 4359 (May 18, 1992). As the Eleventh Circuit has observed,

> A legislature might conclude that public confidence in the in-

tegrity of the insanity defense would be undermined if the legislature delegated release decisions to medical professionals. Likewise, the legislature might find that public confidence would be undermined if a successful plea of insanity were viewed as lacking probative force in decisions about continuing mental illness and public safety. It has also been suggested that a legislature may appropriately attach various consequences to an insanity defense "in order to discourage false pleas of insanity." [Cit.] The Second Circuit has cited the danger of calculated abuse of the insanity defense as a relevant consideration in designing procedures for committing an insanity acquittee. [Cit.] The state also has an interest in protecting society from the insanity acquittee's potential dangerousness. [Cit.] The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act indicates dangerousness. [Cit.] The state has an interest in invoking the judiciary's expertise in criminal matters. [Cit.]

*Benham v. Ledbetter*, 785 F2d 1480, 1487 (11th Cir. 1986).

Nagel concedes, as he must, that under Georgia law the presumption of continuing insanity has some evidentiary weight. Of course, a presumption is meaningless if it does not possess some weight of its own. It must be of sufficient substance such that, standing alone, it cannot be lightly overcome. This does not mean that the presumption of continuing insanity, weighty though it might be, is irrebuttable; " '[i]t will yield to a contrary conclusion, where the circumstances supporting such contrary conclusion exclude the presumption as a reasonable hypothesis by a preponderance of the evidence.' [Cit.]" *Overstreet v. Nickelsen*, 170 Ga. App. 539, 543 (317 SE2d 583) (1984). Indeed, due process would be inconsistent "with a presumption that cannot be rebutted by any amount of uncontradicted evidence." *Benham*, supra, 785 F2d at 1491.

If no amount of evidence offered at a release hearing by an insanity acquittee could rebut the presumption of insanity, the processes of proof in the due process hearing would be an empty ritual. The sole basis for argument would be an appeal to judicial discretion or mercy rather than to a process of proof.

Id.

2. Nagel argues that the statutory presumption of continuing insanity coupled with the rule that the finder of fact is not bound by the opinions of lay or expert witnesses (see *Moses v. State*, 167 Ga.

App. 556, 560 (307 SE2d 35) (1983); *Moses v. State*, 245 Ga. 180, 181 (263 SE2d 916) (1980)), make it highly improbable that the factfinder will ever make a determination of sanity. The result, argues Nagel, is the creation of a de facto irrebuttable (and, therefore, unconstitutional) presumption of insanity. We disagree for two reasons. First, the factfinder may not disregard expert testimony in cases involving the presumption of sanity or insanity. Second, our standard of review and the findings and conclusions we require for that review insure that the presumption under OCGA § 24-4-21 cannot be applied irrebuttably.

(a) Because of the evidentiary weight of the presumption under OCGA § 24-4-21, there is an exception to the general rule that the factfinder is not bound by, and may reject, the opinions of expert witnesses. See *Wilson v. State*, 257 Ga. 444 (359 SE2d 891) (1987); *Stevens v. State*, 256 Ga. 440 (350 SE2d 21) (1986); and *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982). In those cases, we held that, because the factfinder must weigh the evidence and may not arbitrarily ignore it, overwhelming opinion evidence of a medical condition may not be summarily rejected by the factfinder.

> When proof of [sanity] is overwhelming, [judges] may not rely solely on the rebuttable presumption of [insanity]. It is a [judge's] function to determine the credibility of witnesses and the probative value of testimony. [Judges] must weigh the evidence and may not arbitrarily ignore it. Proof of [sanity] may be so clear and so overwhelming that a finding of [insanity] cannot be upheld.

*Wilson v. State*, 257 Ga. at 449 (e). While these cases deal with the presumption of sanity, there is no reason not to apply their rationale to the presumption of insanity.[1] Accordingly, and çontrary to Nagel's argument, the factfinder, here the trial court, may not disregard expert medical evidence and rely solely on the presumption of insanity.

Nevertheless, the mere presentation of evidence to the contrary does not necessarily serve to rebut the presumption; such evidence must outweigh the presumption when the trier of fact balances that evidence against the presumption.

> "A presumption of law, being a circumstantial inference, may become more probable, as existing in fact, by the introduction of supporting evidence, or may become less probable by the introduction of circumstances tending in some degree to

---

[1] To the extent that *Moses v. State*, 167 Ga. App. 556, supra, and *Moses v. State*, 245 Ga. 180, supra, are inconsistent with this holding, they are overruled.

overthrow it, but *will not necessarily disappear unless [sufficiently] rebutted. . . .* [Cit.]" [Cit.] Although numerous theories exist, "it would appear that the effect of presumptions has been settled in Georgia." [Cit.] "Most rebuttable presumptions of law in Georgia are rebutted *only when the jury is persuaded* by a preponderance of the evidence or other required degree of proof to find that the presumed proposition is not there or when the same finding is demanded by the evidence." [Cit.]

*Overstreet v. Nickelsen*, supra at 543-544. Thus, it was necessary not only that Nagel present the testimony of experts and other evidence supporting his position, but also that the testimony be of sufficient weight to overcome the presumption.

(b) Because the presumption of insanity serves as "any evidence," our standard of review of the sufficiency of the evidence cannot be based on the "any evidence" test. In reviewing the trial court's findings on the issue of insanity, we adopt the heightened scrutiny set forth in *Brown v. State*, supra:

Where the standard of proof in the trial court is the "preponderance of the evidence" this court ordinarily reviews the sufficiency of the evidence using the "any evidence" test. [Cit.] With regard to the [insanity] of the accused in a criminal case, however, this standard of review is inadequate since the presumption of [insanity] would always provide some evidence in support of a finding of [insanity]. . . .

We conclude that an appropriate standard of appellate review of the sufficiency of the evidence with regard to a [factfinder's] finding of [insanity] in a criminal case is whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was [sane]. . . . [Cit.]

250 Ga. at 71-72.

In order for us to implement the foregoing standard of review, the trial court must supply specific findings regarding the evidence of sanity and insanity, and his conclusions based on that evidence. The court must consider expert and other evidence presented at the release hearing, and contained in the trial record, on the issue of sanity or insanity. Regarding expert evidence, the court must carefully consider *all* credible relevant evidence on either side. Finally, the court must weigh the evidence in light of the defendant's burden to over-

come the presumption by a preponderance of the evidence.

Here, the trial court gave no indication regarding the basis for its decision that the presumption had not been overcome, and, therefore, we cannot determine whether his conclusion complies with our holding in this case. Accordingly, we remand this appeal to the trial court for specific findings of fact and conclusions of law consistent with the opinion. Upon appeal, if any, we will apply the aforestated standard of review.[2]

*Case remanded. Clarke, C. J., Benham, Fletcher, Sears-Collins, Hunstein, JJ., and Judge Joe C. Crumbley concur.*

DECIDED MARCH 16, 1993.

*Torin D. Togut, Lisa J. Krisher, Phyllis J. Holmen,* for appellant.

*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Assistant District Attorney,* for appellee.

*Remar & Graettinger, Robert B. Remar, Susan C. Jamieson, Mary S. Rauh-Ference, Steven D. Caley,* amici curiae.

---

[2] In *Wilson v. State; Stevens v. State;* and *Brown v. State,* supra, we applied this standard of review. In *Brown* and *Wilson,* we affirmed the jury's verdict of sanity, overcoming the defendant's plea of insanity. In *Stevens,* we reversed the trial court (as finder of fact), concluding that the medical evidence demanded a finding of not guilty by reason of insanity.